**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **MONTRICIA PITTMAN,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **vs.** ] | **Case Number: 2:06CV507-WKW** |
| ] | |
| **and D.T. MARSHALL,** ] | |
| ] | |
| **Defendants.** ] | |

**DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT
OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW the Defendant Sheriff D.T. Marshall, pursuant to Rule 12(b), Fed. R.Civ. P.,

and submits the following Memorandum Brief in Support of Motion to Dismiss Plaintiff's Second

Amended Complaint (Doc. # 25).

**PROCEDURAL HISTORY**

Plaintiff filed her original Complaint on June 6, 2006 against Defendants Montgomery

County Sheriff's Department and D.T. Marshall.  (Doc. # 1) Defendants filed a Motion to Dismiss

on July 5, 2006.  (Doc. # 6)

On April 5, 2007, Plaintiff filed a Motion for Leave to Amend the Complaint.  (Doc. # 11)

This motion was granted by the Court on May 23, 2007.  (Doc. # 12)  Plaintiff filed an Amended

Complaint on May 24, 2007.  (Doc. # 13)

On June 6, 2007, Defendants moved to dismiss the Amended Complaint.  (Doc. # 14) On

August 22, 2007, the Court entered a Memorandum Opinion and Order dismissing all claims against

the Defendant Montgomery County Sheriff's Department.  (Doc. # 24, p. 4)  The Court also granted

1

the Defendants Motion to Dismiss, in part, and denied the motion in part. The Court further ordered

the Plaintiff to filed an Amended Complaint on or before August 31, 2007. (Doc. # 24) Plaintiff

filed a Second Amended Complaint on August 31, 2007.

## FACTS

Plaintiff is a female who was employed as a correctional officer at the Montgomery County

Detention Facility. (Second Amended Complaint, ¶¶ 7-8) In Count I of her Second Amended

Complaint, Plaintiff claims she "was accused of violating the Montgomery County Sheriff's

Department's policy by improperly opening the cell door where the inmate was incarcerated and

ordered to report to training." (Second Amended Complaint, ¶ 18) Plaintiff further claims that a

male officer who had sprayed mace on an inmate and violated policy had not been ordered to report

to training. (Second Amended Complaint, ¶ 19) Plaintiff also claims that another male officer had

a verbal confrontation with an inmate but was not ordered to report to inmate training. (Second

Amended Complaint, ¶ 20) Plaintiff further claims that she protested discriminatory treatment and

was charged with (1) dereliction of duty due to unprofessional response to the inmate; (2)

insubordination of her supervisor by refusing to report for training as arranged by her supervisor;

and (3) failure to comply with verbal orders given for training. (Second Amended Complaint, ¶ 21)


After an investigation, Plaintiff was terminated from employment on September 12, 2005.

(Second Amended Complaint, ¶ 23) Plaintiff appealed her termination to the Montgomery City-

County Personnel Board ("Board"). (Second Amended Complaint, ¶ 24) The Board ruled that

Plaintiff should be reinstated, without back pay, effective January 3, 2006, on the condition that

Plaintiff complete Inmate/Officer Relations Training within ten days of reinstatement. (Second Amended Complaint, ¶ 24)

Plaintiff asserts a claim for Gender Discrimination in Count I of the Second Amended Complaint. Plaintiff claims that she was subjected to gender discrimination when she was ordered to attend Inmate/Officer Relations Training. (Second Amended Complaint, ¶ 26)

In Count II, Plaintiff claims that she protested being ordered to attend training on August 5, 2005, and was terminated on September 12, 2005. (Second Amended Complaint, ¶ 30) Plaintiff claims that the termination was in retaliation for her complaints about attending inmate/officer training. (Second Amended Complaint, ¶ 31)

In Count III, Plaintiff claims that on January 19, 2006, she was accused of harassing Officer Stallworth and other employees while on the job. (Second Amended Complaint, ¶ 33) Plaintiff claims that she talked to Officer Stallworth about his testimony at a personnel hearing and he expressed his disappointment about being served with a subpoena. (Second Amended Complaint ¶ 34) Plaintiff was questioned about this conversation by her supervisor, Lieutenant Jackson, and Plaintiff agreed that she would only discuss work-related issues in the future while on the job. (Second Amended Complaint, ¶ 35) Plaintiff also claims that on January 21, 2006, Lieutenant Jackson contacted Officer Motley and asked him to write a statement against her for harassment. (Second Amended Complaint, ¶ 36) Plaintiff also claims that on January 23, 2006, Lieutenant Jackson informed Officer Motley that he would be brought up on charges if he did not make a statement against the Plaintiff. (Second Amended Complaint, ¶ 37) Plaintiff further claims that on January 25, 2006, Lieutenant Jackson ordered her to meet with him in his office between 4:30 and 6:00 and when she arrived at 4:30 he was not in his office. (Second Amended Complaint, ¶ 38)

3

Plaintiff further claims that when she finally got in contact with Lieutenant Jackson, he verbally harassed her concerning her conduct, and handed a letter to her in which she was warned not to participate in any activities on the job unless the activities were job-related.  (Second Amended Complaint, ¶ 39)

Plaintiff further claims that on January 27, 2006, she called Sherif Marshall and requested a meeting with him regarding the letter, and that he informed her that he did not have time to meet with her.  (Second Amended Complaint, ¶ 40)  Plaintiff claims that she then became depressed and discouraged and resigned from her position with the Montgomery County Detention Facility effective in February 2006.  (Second Amended Complaint, ¶ 42) Plaintiff further claims that the hostile work environment and Sheriff Marshall's conduct constituted unlawful retaliation under Title VII and were to punish her for filing a claim of discrimination with the EEOC.  (Second Amended Complaint, ¶¶ 43-44)

## ARGUMENT

## COUNT I

### Plaintiff has failed to state a claim for gender discrimination.

In Count I, Plaintiff claims she was subjected to gender discrimination when she was ordered to attend Inmate/Officer training. (Second Amended Complaint, ¶ 26)  To survive a motion to dismiss, Plaintiff's Complaint must allege that (1) she was a member of a protected class; (2) that she was subjected to adverse job action; (3) that she was qualified to do the job; and (4) that she was treated less favorably than a similarly situated individual outside her protected class.  *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F. 3d 1313, 1316 (11th Cir. 2003).  With respect to her claim of sex discrimination, it is imperative that Plaintiff allege and show that she suffered an adverse

employment action. *Davis v. Town of Lake Park,* 245 F.3d 1232, 1238 (11th Cir. 2001). Not all conduct by an employer that negatively affects an employee will constitute "adverse employment action." *Id.* To prove adverse employment action for a sex discrimination claim, "an employee must show a serious and material change in the terms, conditions or privileges of employment." *Id.* "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239.

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.

*Guputa v. Florida Bd of Regents,* 212 F.3d 571, 587 (11th Cir. 2002)(citations omitted).

To qualify as "adverse employment action," the action must be "materially adverse" in the eyes of a reasonable person in the circumstances; not in the eyes of Plaintiff. Title VII does not provide a remedy for the "ordinary tribulations of the workplace." *Id.* at 587; *see also Davis,* 245 F. 3d at 1241 (holding reprimands did not result in plaintiff suffering any tangible consequences in the form of loss of pay or benefits, and thus did not rise to the level of "adverse employment actions," and noting that "criticisms of an employee's job performance - written or oral - that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit"); *Brown v. Snow,* 440 F.3d 1259, 1265 (11th Cir. 2006)(criticism of an employee or a negative job evaluation does not amount to adverse employment action unless it leads "to a more tangible form of adverse action")(citing *Davis,* 245 F.3d at 1241).

Plaintiff's gender discrimination claim in Count I based on the order to attend Inmate/Officer

Interaction Training, viewed objectively, does not rise to the level of "adverse employment action." Plaintiff does not allege that she lost any benefits or pay as a result of the order to attend training. The order for training was merely a reprimand-type of action that did not lead to tangible job consequences. *Davis,* 245 F. 3d at 1241. The order to attend training is therefore not an "adverse employment action" and cannot support a claim for sex discrimination in Count I of the Second Amended Complaint.

This Court has already stated in its Memorandum Opinion and Order dated August 22, 2007, that the order to attend training did not rise to the level of an adverse employment action.

> The training Pittman was required to attend is not in itself an adverse employment action and the training itself did not lead to Pittman's termination.

(Memorandum Opinion and Order, Doc. # 24, p. 7) Being ordered to attend training is not an adverse employment action. Plaintiff's gender discrimination claim in Count I of the Second Amended Complaint should be dismissed.

## COUNT II

### Plaintiff has failed to state a claim for Retaliation.

In Count II, Plaintiff claims that she was terminated from employment in retaliation for her complaint about being ordered to attend training. (Second Amended Complaint, ¶ 30) This claim for retaliation should be dismissed.

To prevail on a claim for retaliation under Title VII, the Plaintiff must establish (1) that she engaged in an activity protected under Title VII; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Stewart v Happy Herman's Cheshire Bridge, Inc.,* 117 F. 3d 1278, 1287 (11th

6

Cir. 1997). A plaintiff may be said to engage in such "statutorily protected" speech or activity when he protests an employer's lawful conduct if he demonstrates a good faith, reasonable belief that the employer's action was unlawful. *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1388 (11th Cir. 1998). The plaintiff reporting unlawful discrimination must have a good faith belief of unlawful discrimination. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F. 2d 1491, 1494 (11th Cir. 1989). It is insufficient that the plaintiff alleges his belief was honest; the belief, though perhaps mistaken, must be objectively reasonable. *Clover v. Total System Services, Inc.,* 176 F. 3d 1346, 1351 (11th Cir. 1999). Plaintiff's belief that his employer engaged in an unlawful employment practice must also be measured against existing substantive law. *Id.*

It was not objectively reasonable for Plaintiff to believe that she was being discriminated against based on her sex when she was ordered to attend officer/inmate interaction training. Plaintiff had been involved in improper conduct with an inmate on two separate occasions in the span of approximately one month. Therefore, it was not unreasonable for Plaintiff to be ordered to attend training on the subject of inmate/officer interaction. Viewed objectively, Plaintiff did not have a reasonable belief that she was being discriminated against when she was ordered to attend training. This causes her retaliation claim with respect to the order of training in Count II to fail.

Count II also fails to allege that there were similarly situated male employees (engaging in the same conduct or nearly identical conduct) who were treated more favorably than Plaintiff. In other words, Plaintiff has failed to allege that there was a male who engaged in nearly identical conduct who was disciplined in a more favorable way. This also shows that her belief that her employer engaged in an unlawful employment practice was not objectively reasonable, and therefore her retaliation claim in Count II must fail.

Plaintiff alleges that she had improper encounters with the same inmate on two occasions. On the first occasion, Plaintiff violated security by opening the inmate's cell door and ordering him out of the cell. (Second Amended Complaint, ¶ 15) A month later, Plaintiff had an inappropriate confrontation with the same inmate involved in the earlier incident. (Second Amended Complaint, ¶ 17) Because she had violated policy on two separate occasions in the span of only one month, she was ordered to attend inmate/officer interaction training.

Plaintiff cites to two instances involving male correctional officers who had single confrontations with inmates and who were not ordered to attend training. (Second Amended Complaint, ¶¶ 19-20) One officer had a verbal confrontation with an inmate. The other officer sprayed the inmate with mace. Plaintiff fails to allege that there were male officers who engaged in improper behavior on two occasions with the same inmate as the Plaintiff had done in the time span of approximately of one month. Plaintiff's failure to understand proper inmate relations was more glaring as evidenced by the fact that she violated policy on two separate occasions in the span of approximately one month. This was the reason for the order to attend training. The other instances cited by the Plaintiff are single incidents of improper behavior with an inmate by male correctional officers.

"In determining whether employees are similarly situated, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishment imposed." *Silvera v. Orange County School Bd.,* 24 F.3d 1253, 1259 (11th Cir. 2001). "In order to satisfy the similar offense prong, the comparator's misconduct must be nearly identical

to the plaintiff's in order to prevent courts from second guessing employers' reasonable decisions." *Id.* at 1259; *see also, Knight,* 330 F. 3d at 1316 (plaintiff must show that the employees are "similarly situated in all relevant respects;" *Maynard v. Bd. of Regents of Universities of Fla. Dept. of Educ.,* 342 F.3d 1281, 1289 (11th Cir. 2003).

In *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999), the court held that the <u>quantity and quality</u> of the comparator's misconduct must be nearly identical to the plaintiff's conduct "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." In *Maniccia,* each of the male comparators presented by the female plaintiff was determined not to be "nearly identical" because each had been involved in a single incident of misconduct, while the plaintiff was involved in four separate incidents. *Id.* at 1369. The court reasoned that with respect to the quantity of the misconduct, plaintiff had failed to meet her burden of showing a male comparator. *Id.*

The same is true here. The Plaintiff violated policy on two separate occasions in the span of approximately one month when she was ordered to attend inmate/officer interaction training. The putative comparators in Plaintiff's Second Amended Complaint were involved in a single instance of alleged misconduct. Therefore, with respect to the quantity of the misconduct, there was no male comparator.

Moreover, the misconduct of the Plaintiff is not similar in quality to the alleged misconduct of the putative male comparators. Plaintiff's improper conduct was (1) a security violation that consisted of opening the cell door and allowing the inmate to come out of the cell, coupled with (2) improper behavior/interaction with the same inmate approximately one month earlier. The misconduct of the comparators is not the same or nearly identical. One of the comparators allegedly

sprayed mace on an inmate in violation of county policy. (Second Amended Complaint, ¶ 19) The other comparator allegedly had a verbal confrontation with an inmate. (Second Amended Complaint, ¶ 20)

This failure to allege a similarly situated comparator shows that Plaintiff's belief that her employer was discriminating against her (when she was ordered to attend training) was not objectively reasonable. Without such an objectively reasonable belief that she was being discriminated against, Plaintiff's retaliation claim in Count II of the Second Amended Complaint should be dismissed.

## COUNT III

### Plaintiff has failed to state a claim for Retaliation.

Plaintiff's retaliation claim in Count III should also be dismissed because she has failed to allege that she suffered an adverse employment action. In *Burlington Northern & Santa Fe Railway Co. v. White,* ___ U.S. ___, 126 S.Ct. 2405 (2006), the Supreme Court clarified the standard for the "level of seriousness" to which an employer's retaliatory act must rise before it becomes actionable retaliation: "the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means that it well might have dissuaded a reasonable worker" from engaging in the protected activity. 126 S.Ct. at 2415. The Court also stated that "it is important to separate significant from trivial harms" because Congress's intent was to prohibit employer actions that are likely to deter employees from engaging in protected activity under Title VII. *Id.* In *White,* the Court held that there was sufficient evidence to support the jury's verdict that the plaintiff's reassignment and thirty-seven day suspension without pay were acts of retaliation. *Id.* at 2416. According to the Court, it was common sense that reassigning an employee to less

10

favorable duties and a suspension without pay for 37 days would be considered a serious hardship in the eyes of a reasonable employee.

In Count III, Plaintiff alleges that on January 19, 2006, she was reprimanded/verbally harassed by her supervisor for discussing personal business (her personnel board hearing) with another employee while on the job. (Second Amended Complaint, ¶¶ 33-35) She further claims that on January 23, 2006, the supervisor attempted to get this employee to write a statement against the Plaintiff for harassment.  (Second Amended Complaint, ¶¶ 36-37) Plaintiff also claims that Lieutenant Jackson told her to meet with him between 4:30 and 6:00 on January 25, 2006 and that when she went to meet with him at 4:30 he was not in his office.  (Second Amended Complaint, ¶ 38)  Plaintiff also alleges that Lieutenant Jackson later verbally harassed her on January 25, 2006, and gave her a letter warning her not to participate in any activities on the job unless they were related to the job.  (Second Amended Complaint, ¶ 39)  On January 27, 2006, Plaintiff tried to meet with Sheriff Marshall but he stated that he did not have time to meet with her.  (Second Amended Complaint, ¶ 41)  Plaintiff then resigned from employment effective in February of 2006.  (Second Amended Complaint, ¶ 42)  Plaintiff claims that these actions constitute unlawful retaliation, and were done to punish the Plaintiff for filing her charge of discrimination with the EEOC.  (Second Amended Complaint, ¶¶ 43-44)

Plaintiff does not allege that she lost any pay, benefits or privileges of employment.  She merely alleges that she was reprimanded/warned by her supervisor, and that Sheriff Marshall would not meet with her.  Being reprimanded for conducting personal business while on the job by her employer is not an adverse employment action. Such a reprimand without any loss of job benefits, pay or privileges is not that type of action that is likely to deter reasonable employees from filing

11

an EEOC charge or engaging in other protected activity.  Sheriff Marshall not meeting with the Plaintiff is also not an adverse employment action.  In the eyes of a reasonable employee, this is not the type of serious hardship discussed by the Supreme Court in *White* that is sufficient to support a claim for retaliation under Title VII.  *See also, Crawford v. Carroll,* Docket No. 1:04-cv-089 at * 7-8 (N.D,.Ga. March 8, 2007)(no adverse employment action in retaliation case where plaintiff still maintained job and lost no pay).

Plaintiff has also failed to adequately allege a causal connection between the filing of her EEOC charge and the reprimand and refusal of Sheriff Marshall to meet with her.  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."  *Gupta,* 212 F. 3d at 590.  Here, Plaintiff alleges that Lieutenant Jackson is the one who reprimanded her for conducting personal business on the job in January of 2006.  Plaintiff fails to allege, however, that Lieutenant Jackson knew that she had filed a charge of discrimination with the EEOC in September of 2005.  She has therefore failed to adequately plead a retaliation claim in Count III of the Second Amended Complaint.

Additionally, a plaintiff can satisfy the causal relation if she establishes that there was a "close temporal proximity" between the defendant's knowledge of protected activity, and the adverse action.  *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004).  The Supreme Court has held that "mere temporal proximity between . .  knowledge of protected activity and an adverse . . . action . . must be 'very close;" *Clark County Sch Dist. v.  Breeden,* 532 U.S. 268, 273 (2001).  The Eleventh Circuit has found a gap of three months to be insufficiently close in a retaliation case. *Higdon,* 393 F.3d at 1220; *see also, Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 397

(8th Cir. 20002)(two month gap insufficient); *Ruhling v. Tribune Co.,* Docket No. CV-04-2430(ARL) at * 19 (E.D.N.Y Jan 3, 2007)(passage of more than two months will defeat the retaliatory nexus).

Plaintiff claims she engaged in protected activity when she filed her EEOC charge on September 29, 2005. (Second Amended Complaint, ¶ 44; ex. 1 thereto) The alleged retaliatory actions occurred on January 19-25, 2006, almost four months later. Because there was a substantial delay between the filing of the EEOC charge and the alleged retaliatory conduct, Plaintiff's retaliation claim in Count III fails as a matter of law.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint, and award him any other relief to which he may be entitled.

s/ Constance C. Walker
Thomas T. Gallion, III (ASB-5295-L74T)
Constance C. Walker (ASB-5510-L66C)

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573
(334) 264-7945 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of September, 2007, I electronically filed the foregoing with the Clerk of the Court using the **CM/ECF** system that will send notification of such filing to the following counsel:

Deborah M. Nickson
2820 Fairlane Drive, Ste. A-10
Montgomery, Alabama 36116

s/ Constance C. Walker
Of Counsel

14